UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| D'ANDRE ROLAND BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 22-097-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal prisoner D'Andre Roland Brown was incarcerated at the United States Penitentiary ("USP") – McCreary in Pine Knot, Kentucky. However, he is now being held at the USP in Coleman, Florida. Proceeding without an attorney, Brown filed a Complaint with this Court pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [Record No. 1] The named defendants subsequently filed a motion to dismiss or, alternatively, for summary judgment. [Record No. 28] For the reasons set forth below, the motion will be granted.

## I.

Brown claims that he was assaulted by prison employees in April 2021 while he was confined at USP – McCreary. [*See id.* at 2-3] He also suggests that, following the alleged assault, he requested but was denied timely medical care. [*See id.* at 3.] Brown initially named the Federal Bureau of Prisons ("BOP") as a defendant, and he also sued five John Doe defendants: two lieutenants, two guards, and one nurse. [*See id.* at 1-2.] Brown claims the defendants violated his rights under the Eighth Amendment to the United States Constitution

-1-

as well as multiple provisions of Kentucky state law.  He seeks an unspecified amount of compensatory damages.  [*See* Record No. 1 at 4, 7]

The Court screened Brown's Complaint pursuant to 28 U.S.C. § 1915A and dismissed the claims asserted against the BOP as barred by sovereign immunity.  [Record No. 6 at 2] The Court then informed Brown that, if he wished to proceed with his civil rights action, he would be requred to provide specific information regarding the identity of the John Doe defendants. [*See id.* at 2-3.] Brown eventually identified three of the defendants as Lieutenant Messer, Officer Blankenship, and Nurse Stephens.  [Record No. 14] After those defendants were served, they filed a motion to dismiss or, alternatively, for summary judgment.  [Record No. 28] Brown did not respond to the defendants' motion, despite being afforded more than two months to do so.  [*See* Record Nos. 29, 33.]

## II.

The Court will treat the defendants' motion as one for summary judgment because they have attached and relied upon documents extrinsic to the pleadings.  *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

### A.

At a minimum, Brown's Complaint is subject to dismissal without prejudice because he failed to fully exhaust his administrative remedies with respect to the claims asserted in his pleading as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  There is a multi-tiered administrative grievance process within the BOP.  If a matter cannot be resolved informally *via* a so-called BP-8 Form, the prisoner must file a BP-9 Administrative Remedy Request Form with the Warden, who has 20 days to respond.  *See* 28 C.F.R. §§ 542.14(a) and 542.18.  If the prisoner is not satisfied with the Warden's response,

-2-

he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond.  *See* 28 C.F.R. §§ 542.15 and 542.18.  If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond.  *See* 28 C.F.R. §§ 542.15 and 542.18.

The BOP's administrative remedy program also provides that a prisoner may initiate a grievance at the regional level if the inmate believes the issue at hand is sensitive and his safety or well-being would be placed in danger if the request became known at the institutional level.  *See* 28 C.F.R. § 542.14(d)(1).  The prisoner may then proceed with an appeal to the General Counsel, if necessary.  *See* 28 C.F.R. §§ 542.15 and 542.18.

Here, Brown failed to fully exhaust his administrative remedies with respect to the claims asserted in his Complaint.  The defendants submitted a declaration from a federal prison official, along with records from the BOP's database system, establishing that Brown did not pursue any administrative remedies regarding the claims pending in this case.  [*See* Record No. 28-2 at 3, 91-94.] The defendants do acknowledge that Brown filed and exhausted an administrative tort claim related to his underlying allegations.  [*See* Record No. 28-1 at 23, n.16 (citing Record No. 28-2 at 4, 95-107).]  However, Brown's Complaint did not invoke the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. ("FTCA").  [*See* Record No. 1.][1]  And while the Court construes *pro se* pleadings with leniency, it cannot assert a claim on Brown's behalf.  *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (making it clear that "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading" (citation and quotation marks omitted)).  Thus, this action does not involve the assertion of a FTCA claim

---

[1] Brown's seven-page pleading makes *no* reference to the administrative tort matter he had apparently been pursuing.  [*See* Record No. 1.]

against the United States.   Moreover, as the defendants note, proper exhaustion of an administrative tort claim does not constitute proper exhaustion of the claims at issue here.  *See, e.g., Smith v. United States*, No. 6: 09-cv-00314-GFVT, 2011 WL 4591971, at \*4 (E.D. Ky. Sept. 30, 2011) (exhaustion procedures for FTCA claims and *Bivens* actions are separate and distinct).  Simply put, the only evidence in the record demonstrates that Brown did not fully exhaust his administrative remedies with respect to the claims asserted in his pleading.

Brown alleges at one point in his Complaint that "[n]o one would give me the paperwork I needed to file" requests for an administrative remedy.  [Record No. 1 at 5] However, he then concedes that a prison counselor "did give [him] a BP-10 Form," which "[he] sent in and never got a reply." [*Id.*] Thus, Brown has not actually pled a claim that prison officials somehow functionally caused the grievance process to be unavailable to him.  *See Gilmore v. Ormond*, No. 19-5237, 2019 WL 8222518, at \*2 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)).  And to the extent that Brown alleges that the applicable Regional Director never responded to his BP-10 Form, federal regulations clearly provide that an inmate may consider the absence of a response to be a denial at that level, permitting him to proceed to the next step in the process.  *See* 28 C.F.R. § 542.18.  Since there is no indication that Brown pursued his remedies with the General Counsel, his present claims are, at best, premature which would justify dismissal of the Complaint without prejudice.

**B.**

Notwithstanding the above analysis, the Court will dismiss with prejudice Brown's claims of excessive force under Eighth Amendment because those claims present a new context for a *Bivens* action, and there are special factors counselling against expanding the *Bivens* remedy to this context.

-4-

Claims seeking monetary relief against an individual federal official may be pursued (if at all) pursuant to the doctrine announced in *Bivens*. *Bivens* held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *See Bivens*, 403 U.S. at 397. However, a *Bivens* remedy is judicially created and may be implied only in limited circumstances. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in the following three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar*, 137 S. Ct. at 1854-55.

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants."). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb."). The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. *See also Silva v. United States*, 45

F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

Under *Ziglar*, the Court employs a two-step test in determining if *Bivens* provides a remedy for alleged misconduct by federal officials. First, the Court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*. *Hernandez*, 140 S. Ct. at 743 (citations omitted). Whether the claim is presented in a "new context" is interpreted broadly, as a context will be regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859). A difference is "meaningful" if, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Ziglar*, 137 S. Ct. at 1860.

If a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). This inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be

-6-

in most every case—no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803 (2022). *See also Ziglar*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (cleaned-up).

Brown's Eighth Amendment claims based on allegations that prison employees used excessive force against him presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. While, like the claim implied in *Carlson*, Brown's claims sound in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Plainly, a prisoner's claim that excessive force was used against him by prison staff is a different context than the claim in *Carlson* of deliberate indifference to a prisoner's medical needs. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar,* 137 S. Ct. at 1864, the Court concludes that the first part of the *Ziglar* test has been met.

The Court, therefore, proceeds to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context. *Ziglar*, 137 S. Ct. at 1857. Because "separation of powers should be a guiding light . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

There are multiple reasons that a judicially-implied remedy for damages is not appropriate in this case. First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. However, it has never done so regarding federal actors. To the contrary, more recently, Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, there are several alternative means for prisoners to vindicate constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable mechanism to challenge alleged misconduct by staff. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). This remedy is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.") (emphasis added); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress.") (citation omitted). Nor is the grievance program considered a less effective remedy because it does not provide the

-8-

deterrence afforded by damages. *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition to the foregoing remedy, Brown could have pursued—and apparently did pursue administratively—a claim for monetary relief against the United States pursuant to the FTCA,[2] which is a limited waiver of the federal government's sovereign immunity permitting an action against the United States for negligent or intentional acts committed by its employees during their employment. *See* 28 U.S.C. § 1346(b)(1). Likewise, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct. *Hower v. Damron*, No. 21-5996 (6th Cir., Aug 31, 2022 Order) at p. 5. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S.Ct. at 1858). *See also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

---

[2] Again, while the defendants note in their dispositive motion that Brown filed and exhausted an administrative tort claim related to his underlying allegations [Record No. 28-1 at 23, n.16], his Complaint did not invoke the FTCA [*See* Record No. 1.]

Finally, the context of Brown's claim is significant, since "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524.  As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)).  Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,' – counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85).

The Supreme Court has instructed that, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743).  Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Brown's Eighth Amendment claims alleging that excessive force was used against him, the Court will not do so here.  This conclusion is consistent with recent Sixth Circuit case law.  *See also Greene*, 2022 WL 13638916, at *4 (stating that "special factors counsel against recognizing a new *Bivens* claim in this [Eighth Amendment excessive force] context, namely, that Congress has not created a cause of action for damages against federal corrections officers and officials, [the plaintiff] has an adequate alternative remedy under the BOP grievance system, and implying a cause of action in this context would risk interfering with prison administration." (citations omitted)).

In short, *Bivens* does not provide a monetary remedy for Brown's Eighth Amendment claims based on his allegations that excessive force was used against him and his Complaint fails to state a claim for which the relief that he seeks may be granted.

## C.

The Court will grant summary judgment in favor of Nurse Stephens with respect to Brown's Eighth Amendment deliberate indifference claim. Nurse Stephens is the only medical provider that Brown named as a defendant, and Brown has failed to demonstrate that Stephens was deliberately indifferent to his serious medical needs. Brown therefore is unable to overcome Stephens's grant of qualified immunity.

To state a cognizable claim that an official has violated a prisoner's Eighth Amendment rights with respect to medical care, the prisoner must satisfy two components—one objective and one subjective. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To satisfy the objective component, the prisoner must allege a sufficiently serious medical need. *Id.* To satisfy the subjective component, the prisoner must allege facts which "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [the official] did in fact draw the inference, and that [the official] then disregarded that risk." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, assuming (without deciding) that a *Bivens* remedy may be implied for Brown's claims of deliberate indifference under the Eighth Amendment *and* that Brown alleged a sufficiently serious medical need, he has not established that Nurse Stephens acted with the *mens rea* required to satisfy the subjective prong. To the contrary, the defense's evidence demonstrates that Nurse Stephens repeatedly provided Brown with medical care at the time in question. As summarized by the defendants:

> On April 28, 2021, at 12:03 p.m., Nurse Stephens conducted an initial medical assessment of Brown following an immediate use of force and application of restraints at USP McCreary. Nurse Stephens noted zero injuries reported or observed, and noted that there were no signs of respiratory or circulatory compromise. At 12:18 p.m., Nurse Stephens assessed Brown in the Special

Housing Unit.  At that time, Brown denied any injuries, his pain was noted to be zero, and Nurse Stephens noted no significant findings.  Nurse Stephens further reported that the restraints were not compromising Brown's respiratory or circulatory function.  Again at 1:35 p.m., Nurse Stephens performed a medical check of Brown and noted a clear assessment with zero respiratory or circulatory compromise.  At 7:42 p.m., Nurse Stephens conducted a restraint check.  The records indicate redness and slight indentation following the restraint line, but no skin breakdown.  No pain was noted.

[Record No. 28-1 at 2-3 (citing Record No. 28-2 at 2, as well as Attachments C and D)]

The defense candidly acknowledges that, "[t]he following day, Brown complained of swelling, pain and limited mobility to [the] left arm/elbow," and that "[a]n x-ray was immediately taken, and a fracture at the left elbow area was noted."  [*Id.*]  As a result, Brown was transferred to the hospital, where he received a splint.  [*See id.*]  But this does not undercut the fact that Nurse Stephens provided Brown with medical attention.  At most, it raises questions over the adequacy of that treatment, which does not amount to a constitutional claim.  *See Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.").

Because Brown does not contradict information in medical records submitted by the defendants showing that he received medical treatment, and because he does not otherwise come forward with any probative evidence demonstrating the existence of a factual question regarding the constitutional sufficiency of his medical care, he has failed to create a genuine issue of material fact regarding his Eighth Amendment deliberate indifference claim.  Moreover, as argued by the defense (and not disputed by Brown), as no constitutional violation has occurred with respect to Brown's medical care, Nurse Stephens is entitled to qualified

-12-

immunity from suit.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When evaluating official immunity claims, the Sixth Circuit applies the following three-part test: "[f]irst, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citation omitted). Because no Eighth Amendment violation occurred, Nurse Stephens is entitled to and shielded by qualified immunity.

### D.

As noted, Brown initially sued five John Doe defendants:  two lieutenants, two guards, and one nurse.  [Record No. 1 at 1-2]  He then identified three of the defendants as Lieutenant Messer, Officer Blankenship, and Nurse Stephens.  [Record No. 14]  The United States Attorney's Office, on behalf of the named defendants, now argues that the addition of the still-unnamed defendants in this case—another lieutenant and another guard—would not alter the outcome of this matter.  The undersigned agrees.

As explained, *Bivens* does not provide a monetary remedy for Brown's Eighth Amendment claims based on his allegations that excessive force was used against him.  Thus, even if the Court permitted limited discovery regarding the identities of the unnamed lieutenant

-13-

and guard who also allegedly used excessive force against Brown, the result here would remain the same. *See, e.g., Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016) (noting that a party is not entitled to discovery that would be futile).

### E.

Having resolved Brown's federal claims, the Court reaches no conclusion regarding any asserted state law claims. Instead, the Court declines to exercise supplemental jurisdiction over such claims. The balance of judicial economy, convenience, fairness, and comity all point toward declining jurisdiction over those state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Booker v. City of Beachwood*, 451 F. App'x 521, 522-23 (6th Cir. 2011) (explaining that, once the district court resolved all of the claims over which it had original jurisdiction, "it acted squarely within its discretion by declining supplemental jurisdiction" over the remaining state law claim); *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (stating that, when "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims"). Accordingly, it is hereby

**ORDERED** as follows:

1. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Record No. 28] is **GRANTED**.

2. Brown's Eighth Amendment excessive force and deliberate indifference claims [Record No. 1] are **DISMISSED**, with prejudice.

3. Brown's state law claims [Record No. 1] are **DISMISSED**, without prejudice.

4. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated:   June 9, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky